# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**ARTEMUS TAYLOR**
       **Petitioner-defendant,**

  **v.**                                  **2255 Case No. 20-C-986**
                                                  **Criminal Case No. 13-CR-164**

**UNITED STATES OF AMERICA**
       **Respondent-plaintiff.**

---

## DECISION AND ORDER

Petitioner-defendant Artemus Taylor filed a pro se motion to vacate his conviction pursuant to 28 U.S.C. § 2255, raising a claim under United States v. Davis, 139 S. Ct. 2319 (2019), and to reduce his sentence pursuant to 18 U.S.C. § 3582(c), based on extraordinary circumstances due to the COVID-19 pandemic. For the reasons that follow, I deny the motion in its entirety.

## I. BACKGROUND

On June 25, 2013, Taylor and two accomplices robbed Tobruk Food Market in Milwaukee, Wisconsin. One customer and one employee (the owner) were in the store at the time of the robbery. The store surveillance video shows Joshua Childress entering and purchasing a single cigarette. Within one minute, Taylor and "D.J." (a minor) entered the store. Taylor produced a handgun and stated: "It's a robbery. Open the register." Taylor dumped the cash register tray onto the counter and took approximately $150. At Taylor's instruction, D.J. removed coins from the counter. Taylor and D.J. then fled the store. (PSR ¶ 8.)

During the robbery, Childress acted like an innocent bystander, with his hands in the air.

After the robbery, Childress said to the customer and store owner something to the effect of "we almost got shot." The customer told Childress to lock the door, but Childress instead ran out of the store after Taylor and D.J. as if he was trying to catch up with them. (PSR ¶ 8.)

An off-duty police officer observed Taylor and another individual running toward a nearby park. The officer called her lieutenant and learned a robbery had recently occurred in the area. (PSR ¶ 11.) Officers responded to the park and arrested Taylor, Childress, and D.J. (PSR ¶ 12.) Taylor initially denied any involvement in the robbery but eventually confessed, indicating that he, D.J., Childress, and Childress's brother planned the robbery at Childress's residence. (PSR ¶ 13.)

Pursuant to an agreement with the government, Taylor pleaded guilty to Hobbs Act robbery, 18 U.S.C. § 1951, and brandishing a firearm during a crime of violence, 18 U.S.C. § 924(c). The pre-sentence report ("PSR") calculated a guideline range of 46-57 months on the robbery count (offense level 19, criminal history category IV) and 84 months consecutive on the firearm count. (PSR ¶ 77.) The PSR noted prior adult convictions for disorderly conduct (PSR ¶ 37), robbery with use of force (PSR ¶ 39), and possession of marijuana twice (PSR ¶¶ 40, 43). Taylor was on extended supervision for the previous robbery conviction at the time he committed the instant offense, resulting in revocation. (PSR ¶ 39, 45.)

On February 28, 2014, Judge Randa imposed a sentence of 12 months on the robbery count followed by 84 months consecutive on the firearm count for a total of 96 months. Taylor took no appeal. He is currently serving the sentence at USP Beaumont, with a projected release date of September 23, 2022.[1]

---

[1] https://www.bop.gov/inmateloc/ (last visited May 26, 2021).

On June 30, 2020, Taylor filed the instant motion, which the clerk's office docketed in the criminal case and as a new § 2255 action. The motion states:

> Comes now Artemus Taylor "petitioner" proceeding without counsel and moves this honorable court to vacate defendant's 924(c) based on Supreme Court's decision in United States v. Davis, 139 S. Ct. 2319 (2019). See, p. 2 of plea agreement which states: . . . commerce by robbery, and "conspired to do so." Also, defendant is requesting relief under Title 18 U.S.C. § 3582 based on "extraordinary circumstances" due to the COVID-19 pandemic. Respectfully, petitioner would like to get counsel appointed to amend/supplement the record in the interest of justice.

(Motion at 1.)

I referred the matter to Federal Defender Services for review, pursuant to the court's standing order regarding First Step Act motions, but FDS declined to supplement the pro se submission. The government responded in opposition to both aspects of the motion. Taylor has filed nothing further in support.

## II. 2255 CLAIM

### A. Legal Standards

Section 2255 permits a federal prisoner challenge his sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Relief under § 2255 is an extraordinary remedy because it asks the district court essentially to reopen the criminal process to a person who already has had an opportunity for full process. Almonacid v. United States, 476 F.3d 518, 521 (7th Cir. 2007). "Hence, relief is appropriate only for an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice." Harris v.

3

United States, 366 F.3d 593, 594 (7th Cir. 2004) (internal quote marks omitted).

Further, a claim cannot be raised for the first time in a § 2255 motion if it could have been raised at trial or on direct appeal. McCoy v. United States, 815 F.3d 292, 295 (7th Cir. 2016). A federal prisoner cannot bring defaulted claims on collateral attack unless he shows cause and prejudice for the default, or that he is actually innocent of the crimes of which he was convicted. Id.

Finally, § 2255 actions are subject to a one-year limitation period running from the latest of: (1) the date on which the judgment of conviction becomes final; (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action; (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence. 28 U.S.C. § 2255(f).

**B.     Analysis**

Taylor asks the court to vacate his § 924(c) conviction based on the Supreme Court's decision in Davis, which found the statute's "residual clause" unconstitutionally vague.[2] 139 S. Ct. at 2336. In Davis, the government charged Hobbs Act conspiracy as a predicate crime of violence, which depended on the residual clause. Id. at 2325. Taylor pleaded guilty to Hobbs Act robbery, which qualifies as a crime of violence under the "elements clause" of § 924(c).

---

[2]The government indicates that the motion appears to be timely, filed within the one-year anniversary of Davis. (R. 127 at 7.)

4

Haynes v. United States, 936 F.3d 683, 690 (7th Cir. 2019); United States v. Fox, 878 F.3d 574, 579 (7th Cir. 2017). Taylor's information charged that he "did unlawfully obstruct, delay, and affect commerce by robbery, and conspired to do so, in that the defendant did unlawfully take and obtain articles and commodities in interstate commerce, from and in the presence of an employee of Tobruk Food Market against his will by means of actual and threatened force, violence, and fear of injury to his person." (Case No. 13-CR-164, R. 40 at 1.) Taylor seizes on the phrase "and conspired to do so," but his plea agreement in setting forth the elements of the offense made quite clear that he was pleading guilty to a substantive Hobbs Act robbery offense, not a conspiracy (Case No. 13-CR-164, R. 37 ¶ 10); the factual statement in the plea agreement likewise indicated that Taylor was the actual gunman in the robbery, not a co-conspirator or accomplice (id. at 14). Accordingly, Davis does not help Taylor.

Taylor also waived any claim that his Hobbs Act offense was not a valid § 924(c) predicate by unconditionally pleading guilty. See United States v. Starwalt, 701 Fed. Appx. 508, 509 (7th Cir. 2017) (citing United States v. Wheeler, 857 F.3d 742, 744-45 (7th Cir. 2017); Davila v. United States, 843 F.3d 729, 731-32 (7th Cir. 2016)).

### III. COMPASSIONATE RELEASE CLAIM

**A.    Legal Standards**

Section 3582(c)(1)(A) authorizes the district court to grant what is commonly known as "compassionate release." The statute provides, in pertinent part:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with

5

> or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A)(i). The statute contains three requirements: (1) the defendant must first make a request to the warden before applying to the court; (2) the defendant must then demonstrate to the court that "extraordinary and compelling reasons" warrant a reduction in his sentence; and (3) the court must determine whether, even if such reasons are shown, a reduction of the sentence would be inconsistent with the applicable 18 U.S.C. § 3553(a) factors. United States v. Cole, No. 08-CR-327, 2021 U.S. Dist. LEXIS 2404, at *5 (E.D. Wis. Jan. 7, 2021).

**1. Exhaustion**

Before 2018, compassionate release required a motion from the BOP. United States v. Sanford, 986 F.3d 779, 781 (7th Cir. 2021). The First Step Act of 2018 amended the compassionate release statute to permit the court to adjudicate a motion directly from the defendant. However, the defendant must first present his request for compassionate release to the warden and exhaust administrative appeals (if the request is denied) or wait 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier. Id. at 781-82. The Seventh Circuit has held that, while this "exhaustion" requirement is not jurisdictional, it is a mandatory claim-processing rule which must be enforced if raised by the government. Id. at 782; see also United States v. Williams, 987 F3d 700, 703 (7th Cir. 2021) (holding that "an inmate is required to present the same or similar ground for compassionate

6

release in a request to the Bureau as in a motion to the court").

### 2. Extraordinary and Compelling Reasons

The statute does not define the term "extraordinary and compelling reasons." Rather, Congress instructed the Sentencing Commission, in promulgating general policy statements regarding the sentence modification provisions in § 3582(c)(1)(A), to describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. 28 U.S.C. § 994(t). The Commission's policy statement provides:

> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
>
> (1) (A) extraordinary and compelling reasons warrant the reduction . . .
>
> (2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3) the reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13. The commentary to the policy statement indicates that extraordinary and compelling reasons exist under these circumstances:

> (A) Medical Condition of the Defendant.—
>
> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> (ii) The defendant is—
>
> (I) suffering from a serious physical or medical condition,

7

> > (II) suffering from a serious functional or cognitive impairment, or
>
> > (III) experiencing deteriorating physical or mental health because of the aging process,
>
> > that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (B) Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
>
> (C) Family Circumstances.—
>
> > (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
>
> > (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>
> (D) Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 cmt. n.1.

The Commission has not updated the policy statement, which purports to require a motion from the director of the Bureau of Prisons, see U.S.S.G. § 1B1.13 cmt. n.4, since the passage of the First Step Act, which allowed defendants to bring their own motions. Accordingly, "because the Guidelines Manual lacks an applicable policy statement, the trailing paragraph of §3582(c)(1)(A) does not curtail a district judge's discretion." United States v. Gunn, 980 F.3d 1178, 1180 (7th Cir. 2020); see also United States v. Brooker, 976 F.3d 228, 237 (2d Cir. 2020) ("[T]he First Step Act freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in

8

motions for compassionate release. Neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion.").

Giving the statutory terms their common meaning, a defendant seeking compassionate release must demonstrate that his situation is extraordinary, i.e., beyond what is usual, customary, or regular, and his need for release compelling, i.e., irreparable harm or injustice will result if relief is not granted. United States v. Scott, 461 F. Supp. 3d 851, 862 (E.D. Wis. 2020); see also Gunn, 980 F.3d at 1180 (noting that the Commission's analysis can guide discretion without being conclusive). In the context of the COVID-19 pandemic, courts have found that modification may be warranted if the prisoner demonstrates that he is particularly vulnerable to the virus based on his age, health status, or other specific circumstances; on the other hand, courts have tended to deny compassionate release requests based on general concerns about possible exposure in prison. E.g., United States v. Dover, No. 14-CR-196, 2020 U.S. Dist. LEXIS 133340, at *16-17 (E.D. Wis. July 28, 2020); see also United States v. Thomas, No. 1:11-CR-22, 2020 U.S. Dist. LEXIS 172963, at *6-7 (N.D. Ind. Sept. 22, 2020) (explaining that § 3582(c)(1)(A) contemplates a sentence reduction based on the particular circumstances of where the defendant is housed and his personal health conditions).

### 3. Section 3553(a) Factors

Finally, if the court decides that extraordinary and compelling reasons have been shown, it must also consider the applicable § 3553(a) factors to determine whether the sentence should be modified. See United States v. Saunders, 986 F.3d 1076, 1078 (7th Cir. 2021) ("Because of the importance of the § 3553(a) factors, courts are not compelled to release every prisoner with extraordinary and compelling health concerns."). Those factors include: (1) the nature and circumstances of the offense, and the history and characteristics of the defendant;

(2) the need for the sentence imposed to provide just punishment, deterrence, protection of the public, and correctional treatment; (3) the kinds of sentences available; (4) the sentencing guideline range; (5) any pertinent policy statement issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities; and (7) the need to provide restitution to the victims of the offense. 18 U.S.C. § 3553(a). In some cases, a court may find that the relevant § 3553(a) factors outweigh the extraordinary and compelling reasons warranting compassionate release and/or that release would undermine the goals of the original sentence. United States v. Bartlett, No. 06-CR-273, 2020 U.S. Dist. LEXIS 101393, at *13-14 (E.D. Wis. June 9, 2020).

**B.     Analysis**

Taylor gives no indication that he has requested compassionate release from the warden. As the government notes, his motion could be denied based on failure to exhaust alone. (R. 127 at 3.) In any event, Taylor fails to provide a basis for relief under the statute.

Taylor states that he is requesting relief under § 3582 "based on extraordinary circumstances due to the COVID-19 pandemic." (Motion at 1.) Taylor does not identify the extraordinary circumstances supporting his request. He does not, for instance, claim to suffer from any medical condition placing him at greater risk from the virus, nor does he contend that the conditions at his particular facility support release.[3] Taylor is just 29 years old (PSR ¶ 54) and, according to the PSR, in overall good health. He reported suffering from asthma when he was young but had not had an asthma attack in several years. (PSR ¶ 63.) The

---

[3]At the time he filed his motion, Taylor was confined at USP Thomson. In its response, the government notes that as of July 16, 2020, Thomson had just one positive inmate out of 1087. (R. 127 at 6.) Taylor is now housed at USP Beaumont, which reports no positive inmates or staff members. https://www.bop.gov/coronavirus/ (last visited May 26, 2021).

10

government has obtained Taylor's prison medical records (R. 129 at 1-59), which contain no reference to asthma or any other medical condition identified by the CDC as elevating the risk of severe illness from COVD-19 (see R. 129 at 32, documenting current and resolved conditions). Taylor accordingly fails to demonstrate extraordinary and compelling reasons for release. See United States v. Madrigal, No. 1:13-CR-22-HAB, 2021 U.S. Dist. LEXIS 4338, at *6 (N.D. Ind. Jan. 11, 2021) ("Defendant's case is easily adjudicated, as he alleges no basis other than the mere existence of COVID in his motion. This is not grounds for compassionate release.").

The § 3553(a) factors also weigh against granting release. As discussed above, Taylor committed a serious offense, brandishing a firearm at the victim and using a minor to assist in taking the money. (PSR ¶ 27.) Just 21 years old at the time of sentencing, Taylor had already compiled a serious criminal record, including a previous conviction for robbery with use of force. The court initially stayed a prison sentence in favor of probation in that case, but Taylor failed to comply with his conditions, resulting in revocation and activation of the prison term. Released from that prison sentence on April 16, 2013, he committed the instant offense about two months later, resulting in revocation of his extended supervision. (PSR ¶ 39.) Releasing Taylor early would undermine deterrence and public protection.

## IV. COUNSEL

Taylor indicates that he would like to have counsel appointed to amend/supplement the record in the interest of justice. While there is no right to counsel in either § 2255 or § 3582(c) proceedings, the court may appoint counsel in the exercise of discretion.[4] See United States

---

[4]As indicated, I referred the matter to FDS pursuant to the court's standing order on First Step Act motions, but FDS declined to supplement the pro se submission.

v. Tidwell, 178 F.3d 946, 949 (7th Cir. 1999) (§ 3582); Oliver v. United States, 961 F.2d 1339, 1343 (7th Cir. 1992) (§ 2255). I decline to appoint counsel here. While Taylor's motion is bare-bones, he has identified the correct procedural vehicles and appears capable of presenting his claims. The government has supplied Taylor's prison medical records, and Taylor gives no indication as to how the record must otherwise be supplemented. I will, as the government suggests, deny the compassionate release motion without prejudice. Finally, the § 2255 claim is not complex and plainly lacks merits under Seventh Circuit precedent.

## V.  CONCLUSION

**THEREFORE, IT IS ORDERED** that Taylor's motion for sentence reduction (Case No. 13-CR-164, R. 123) is denied without prejudice. The government's motion to seal Taylor's medical records (Case No. 13-CR-164, R. 128) is granted.

**IT IS FURTHER ORDERED** that Taylor's motion to vacate (Case No. 20-C-986, R. 1) is denied. The Clerk is directed to enter judgment accordingly. Pursuant to Rule 11(a) of the Rules Governing Section 2255 Proceedings, the district court must issue or deny a certificate of appealability ("COA") when it enters a final order adverse to a § 2255 petitioner. In order to obtain a COA, the petitioner must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); see Slack v. McDaniel, 529 U.S. 473, 484 (2000). For the reasons stated above, Taylor cannot make such a showing, so I decline to issue a COA.

Dated at Milwaukee, Wisconsin, this 26th day of May, 2021.

/s/ Lynn Adelman
LYNN ADELMAN
District Judge